UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 2012-CV-00980-REB-KLM

Plaintiff(s):       **HOSSEIN BAGHER, d/b/a CHERRY CREEK ORIENTAL RUGS**

v.

Defendant(s):       **AUTO-OWNERS INSURANCE COMPANY**

**MOTION TO EXCLUDE TESTIMONY OF
WENDY MADIGOSKY, M.D. PURSUANT TO F.R.E. 702**

The Defendant, Auto-Owners Insurance Company ("Auto-Owners"), through its attorneys, Gregory R. Giometti & Associates, P.C., hereby submits its Motion to Exclude Testimony of Wendy Madigosky, M.D. Pursuant to F.R.E. 702, as follows:

**I. INTRODUCTION:**

This litigation arises from two separate insurance claims Plaintiff asserted in 2009 and 2011 related to alleged water damage at Plaintiff's business, Cherry Creek Oriental Rugs ("CCOR"), a retail rug store. Plaintiff alleges that, as a result of the 2009 water leak, a number of rugs in the store were either damaged or destroyed; Plaintiff claims that, as a result of the 2011 incident, a number of additional rugs were damaged or destroyed, and he further claims that there was damage to the building itself. At the time of these alleged water intrusion events, Plaintiff and his business were insured under policies issued by Auto-Owners, and Plaintiff asserted two separate insurance claims to recover damages for these incidents. Plaintiff alleges that Auto-Owners acted unreasonably and in bad faith with respect to his insurance claims, and that Auto-

1

Owners delayed payment of benefits owed to him in violation of C.R.S. §§ 10-3-1115 and -1116.

On March 12, 2013, Plaintiff served his expert disclosures, attached hereto as **Exhibit 1**, endorsing various experts, including an expert in the standards of the insurance industry, a witness who conducted an appraisal of the allegedly damaged/destroyed rugs, and various witnesses to testify regarding the alleged damage to the building that houses CCOR. In addition, on October 25, 2013, more than seven months after Plaintiff's expert disclosure deadline, Plaintiff was permitted to endorse three additional expert witnesses related to a new theory of damages never addressed in the pleadings or pursued by Plaintiff previously in this litigation. Specifically, Plaintiff raised for the first time the allegation that, as a result of the 2009 and/or 2011 water intrusion events, mold developed in the CCOR building. Plaintiff claims without support that the alleged growth of mold in the building is attributable to Auto-Owners' conduct in the handling of the claims. Plaintiff further alleges that, as a result of the development of mold, he has suffered bodily injury, including permanent lung scarring.[1] In support of Plaintiff's newly asserted mold-related claim, on October 25, 2013, Plaintiff endorsed three additional expert witnesses – Rod Shafer, who conducted "fungal inspection services" at the CCOR building; Wendy Madigosky, M.D., Plaintiff's primary care physician; and Brendan Clark, M.D., a pulmonologist with whom Plaintiff briefly treated for the medical conditions he attributes to mold exposure.

Auto-Owners now requests that the Court exercise its gatekeeping function under F.R.E. 702, and exclude the testimony of Wendy Madigosky regarding the nature

---

[1] Auto-Owners incorporates by reference the arguments set forth in its Response to Plaintiff's Motion for Limited Extension of Discovery Regarding New Evidence, in which it objected to Plaintiff's request to pursue this new theory of damages, in part due to the fact that evidence regarding these claims would not be admissible.

and cause of Plaintiff's alleged medical conditions. Dr. Madigosky has been endorsed to testify that, as a result of mold exposure at CCOR, Plaintiff developed respiratory symptoms and conditions, including scarring in his lungs. However, as discussed below, Dr. Madigosky is not sufficiently qualified to testify as an expert on these matters, and her opinions in this regard are not reliable under F.R.E. 702. Therefore, this purportedly expert medical causation testimony is inadmissible and should be excluded.

## II. LEGAL STANDARD:

The decision to admit or exclude expert testimony under Rule 702 is within the sound discretion of the trial court; however, upon challenge to a proffered opinion, a court must exercise its gatekeeper function to ensure that the Rule 702 foundational requirements for the admission of expert testimony are satisfied. *Daubert v. Merrell Dow Pharm. Inc.,* 509 U.S. 579 (1993); *see also, e.g., Dodge v. Cotter Corp.,* 328 F.3d 1212, 1222-23 (10th Cir. 2003) ("Though the district court has discretion in how it conducts the gatekeeper function, we have recognized that it has no discretion to avoid performing the gatekeeper function.").

The proponent of expert testimony bears the burden of showing that the proffered testimony is admissible. *See, e.g., U.S. v. Nacchio,* 555 F.3d 1234, 1241 (10th Cir. 2009). In order to be admissible, expert testimony must be both reliable and relevant. *Daubert,* at 589-590. In order for expert testimony to be sufficiently reliable for admission, it must be derived from the scientific method and supported by appropriate validation, and must not be based on subjective belief or unsupported speculation. *Id.*

In order to be sufficiently relevant under F.R.E. 702, expert testimony must assist the trier of fact to understand the evidence or determine a fact in issue. *Id.* at 590.

Courts frequently refer to the relevance prong of the F.R.E. 702 test as one of appropriate "fit." *Id.* As noted by the U.S. Supreme Court in *Daubert,* "[f]it is not always obvious, and scientific validity for one purpose is not necessarily scientific validity for other, unrelated purposes." *Id.* (internal quotes omitted). "Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Id.* at 591-92.

Appellate courts review trial courts' actual application of the standard in deciding whether to admit or exclude an expert's testimony for abuse of discretion. *See, e.g., Dodge v. Cotter Corp.,* 328 F.3d 1212, 1223 (10th Cir.2003). "A district court abuses its discretion when it renders an arbitrary, capricious, whimsical, or manifestly unreasonable judgment." *Ralston v. Smith & Nephew Richards, Inc.,* 275 F.3d 965, 968 (10th Cir.2001) (quotations omitted). Under the abuse of discretion standard, trial courts' admission of expert testimony will constitute an abuse of discretion if the appellate court has "a definite and firm conviction that the ... court has made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Id.* at 968–69.

Finally, even if a trial court determines that expert testimony is both reliable and relevant, F.R.E. 403 permits the exclusion of such testimony "if its probative value is substantially outweighed by danger of unfair prejudice, confusion of the issues, or misleading the jury." *See, Daubert,* at 595. "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses." *Id.* (quoting with

approval Weinstein, "Rule 702 of the Federal Rules of Evidence is Sound; It Should Not Be Amended," 138 F.R.D. 631, 632 (1991)).

### III. ARGUMENT:

**A.   The testimony of Dr. Madigosky should be excluded under F.R.E. 702 because she lacks sufficient qualifications to render the proffered expert opinions, her testimony is not based on sufficient facts and data, and the methodology utilized in forming the opinions is not sufficiently reliable.**

Preliminarily, Auto-Owners notes that F.R.E. 702 requires Plaintiff, as the proponent of Dr. Madigosky's testimony, to establish the foundational requirements of the rule; it is not Auto-Owners' burden to establish that Dr. Madigosky's opinions are not reliable or that Dr. Madigosky did not utilize a reliable methodology in forming her opinions. Therefore, although Auto-Owners has set forth below a number of reasons that it believes that Dr. Madigosky's opinions should be excluded under F.R.E. 702, Auto-Owners requests that the Court hold an evidentiary hearing on the admissibility of this proffered testimony, wherein Auto-Owners will introduce evidence of what is required for an expert to form a reliable medical causation opinion.

#### 1.   Dr. Madigosky's Proffered Expert Opinions

In Plaintiff's October 25, 2013 supplemental expert disclosure, he endorsed Wendy Madigosky, M.D., his primary care physician, as an expert to testify regarding the nature and cause of the medical conditions that Plaintiff attributes to mold exposure at CCOR. Plaintiff did not provide an expert report for Dr. Madigosky, as he endorsed her as non-specially retained expert witness. In his supplemental expert disclosure, Plaintiff provided the following summary of Dr. Madigosky's proffered opinions:

> If called, Dr. Madigosky is expected to testify consistent with her treatment notes, Plaintiff's other medical records disclosed in this case, as well as her deposition, if taken. Specifically, Dr. Madigosky may testify concerning

5

      the onset, exacerbation, and treatment of Plaintiff's various pulmonary and other medical issues following the 2011 water loss, including but not limited to shortness of breath, wheezing, and the development of asthma. Dr. Madigosky may testify that these symptoms and disorders primarily developed following the 2011 water loss and are consistent with Plaintiff's exposure to mold in his retail rug store following the loss. Dr. Madigosky is expected to testify that Plaintiff has developed permanent lung scarring as result of his exposure to that mold, as is supported by CT scans conducted shortly before the loss and again in the years following the loss, the former of which shows no lung scarring and the latter of which does. Dr. Madigosky may testify regarding the various treatments recommended or prescribed to Plaintiff, as well as the various tests and investigations conducted by herself and other treatment providers at the University of Colorado Hospital and elsewhere. Dr. Madigosky may also testify concerning Plaintiff's prognosis for the future, and any recommendations she may have in this regard. Dr. Madigosky may also summarize the medical treatment Plaintiff has received from herself and other providers, specifically those affiliated with the University of Colorado Hospital. Because Plaintiff is still treating with Dr. Madigosky, her opinions may be supplemented following additional treatments or investigations occurring after the date of this disclosure. Dr. Madigosky's opinions in this matter will be made to a reasonable degree of medical probability.

**Exhibit 2**, pp. 4-5.

      **2.    Dr. Madigosky lacks sufficient qualifications to render the proffered opinions.**

      Dr. Madigosky is a general practitioner. As such, throughout her deposition, a copy of which is attached hereto as **Exhibit 3**, Dr. Madigosky clarified that her opinion that Plaintiff's medical conditions are attributable to mold exposure were not based on specialized medical knowledge, that she is not a specialist in this particular area, that she would defer to specialists on causation issues, etc. *See* **Exhibit 3,** 25-26; *see id.* at 12 (clarifying that she is not a microbiologist, and her opinions were from a generalist's perspective); *see id.* at 13 (stating she is not an allergist or a pulmonologist or microbiologist and her opinions were based on her "generalist conceptualization"); *see id.* at 25 (testifying that she was unaware of the levels of mold exposure necessary to

cause the types of health conditions Plaintiff claims are related to mold, and that determination is better left to a pulmonologist, allergist, or microbiologist); *see id.* (testifying that she was unaware how long it would take for the health conditions Plaintiff claims are attributable to mold to manifest after mold exposure); *see id.* (testifying that she does not have specialized knowledge regarding the amount of time an individual would need to be exposed to mold in order for these health conditions to manifest). Dr. Madigosky's experience in treating health conditions related to exposure to mold is limited to "only a few patients who have mentioned significant mold exposures to [her]." *Id.* at p. 26. Dr. Madigosky's involvement with patients with health conditions allegedly related to mold exposure, including her involvement in Plaintiff's treatment for conditions he attributes to mold, is limited, because in each such case, she referred the patient to specialists, such as an allergist or occupational health provider. *Id.* In this case, Dr. Madigosky referred Plaintiff to an allergist for further evaluation and treatment of the respiratory issues Plaintiff attributes to mold exposure. *Id.* at 26-28.

Dr. Madigosky was unable to identify any medical literature in support of her opinion that mold exposure is a potential cause of the types of health problems that Plaintiff claims he sustained as a result of exposure to mold. *Id.* at 25-26. She testified that she is not familiar with any medical literature discussing causal links between health conditions and mold exposure. *Id.* at 29. Her opinion that mold can cause inflammatory reactions such as that allegedly identified in Plaintiff is based on her "general knowledge from medical school." *Id.* at 26. Dr. Madigosky has no knowledge of whether certain types of mold are more or less likely to cause health symptoms or allergic reactions in individuals. *Id.* at 29. Dr. Madigosky was not the treatment provider

who actually diagnosed the respiratory issues in Plaintiff that he attributes to mold exposure. *Id.* at 34-35. Her opinion that Plaintiff indeed has developed any respiratory issues, regardless of the cause, is based on her understanding of another physician's diagnosis.

In sum, based on Dr. Madigosky's deposition testimony, she lacks sufficient qualifications to provide expert testimony on either general causation or specific causation of Plaintiff's alleged respiratory conditions. Plaintiff will be unable to meet his burden of establishing that Dr. Madigosky is sufficiently qualified to render the proffered medical causation opinions, and her testimony should therefore be excluded under F.R.E. 702.

**3. Dr. Madigosky's proffered expert opinions were not formed using a reliable methodology.**

In analyzing injury causation testimony, it is important to differentiate between the two concepts of general and specific causation. As described by the 10th Circuit Court of Appeals, "[g]eneral causation is whether a substance [or event] is capable of causing a particular injury or condition in the general public and specific causation is whether a substance [or event] caused a particular individual's injury." *Norris v. Baxter Healthcare Corp.,* 397 F.3d 878, 881 (10th Cir. 2005). It is well recognized in both the legal and scientific realms that, in order to establish injury causation, "Plaintiff must first demonstrate general causation because without general causation, there can be no specific causation." *Id.* In other words, if Dr. Madigosky's general causation opinion is not valid, it follows *a fortiori* that her specific causation opinion is unreliable and inadmissible.

Thus, in evaluating the reliability of Dr. Madigosky's methodology in forming her opinion that Plaintiff's respiratory conditions were caused by exposure to mold at CCOR, the first step is to determine whether her general causation opinion is valid – that is, did Dr. Madigosky reliably determine that exposure to mold is capable of causing the respiratory conditions Plaintiff allegedly developed? Here, Dr. Madigosky has no general causation opinions whatsoever. General causation can be established by epidemiology, controlled studies, medical literature, etc. *See, e.g., In re Breast Implant Litig.,* 11 F. Supp. 2d 1217, 1224 (D. Colo. 1998). In this case, Dr. Madigosky was unable to identify any support in epidemiology, medical literature, or studies to establish that mold exposure is capable of causing the respiratory issues Plaintiff now claims. Specifically, Dr. Madigosky was unable to identify any medical literature in support of her opinion that mold exposure is a potential cause of the types of health problems that Plaintiff claims he sustained as a result of exposure to mold. *Id.* at 25-26. She testified that she is not familiar with any medical literature discussing causal links between health conditions and mold exposure. *Id.* at 29. Her opinion that mold can cause inflammatory reactions such as that allegedly identified in Plaintiff is based on her "general knowledge from medical school." *Id.* at 26. Dr. Madigosky has no knowledge of whether certain types of mold are more or less likely to cause health symptoms or allergic reactions in individuals. *Id.* at 29. Dr. Madigosky testified that she was unaware of the levels of mold exposure necessary to cause the types of health conditions Plaintiff claims are related to mold, and that determination is better left to a pulmonologist, allergist, or microbiologist. *Id.* at 25. She also testified that she was unaware how long it would take for the health conditions Plaintiff claims are attributable to mold to manifest

after mold exposure and that she does not have specialized knowledge regarding the amount of time an individual would need to be exposed to mold in order for these health conditions to manifest. *Id.*

Thus, Dr. Madigosky's general causation opinion is unreliable because it is not actually based on scientific or technical knowledge. This general causation opinion is far too speculative to survive a challenge under F.R.E. 702, and because Dr. Madigosky's general causation opinion is unreliable, the Court need not even evaluate whether her specific causation opinion is reliable.

However, even if Dr. Madigosky had a reliable general causation opinion in this case, her specific causation opinion is unreliable under F.R.E. 702. As previously noted, an opinion regarding specific causation in this case relates to whether mold exposure did indeed cause Plaintiff's alleged respiratory conditions, including alleged scarring in his lungs. In essence, Dr. Madigosky does not actually have opinions regarding the nature and cause of Plaintiff's alleged respiratory problems because she did not actually diagnose Plaintiff with any particular health condition; rather her opinions are based on her understanding of diagnoses reached by other treatment providers after Dr. Madigosky referred Plaintiff to physicians with more specialized knowledge in this area. Specifically, after Plaintiff reported shortness of breath and advised Dr. Madigosky that he had allegedly been exposed to mold, Dr. Madigosky referred Plaintiff to an allergist, who conducted allergy tests **Exhibit 3,** at 26.

Dr. Madigosky was not the treatment provider who actually diagnosed the respiratory issues in Plaintiff that he attributes to mold exposure. *Id.* at 34-35. Based on Dr. Madigosky's interpretation of the allergy tests conducted, she does not believe

Plaintiff has any allergy to the types of mold that were tested. *Id.* There are no tests, scientific data, or other support in the medical records that Dr. Madigosky could identify to support a conclusion that Plaintiff's alleged respiratory inflammation is attributable to mold exposure. In fact, Dr. Madigosky did not even identify or diagnose any specific respiratory condition in Plaintiff; rather, Dr. Madigosky's opinions regarding Plaintiff's alleged medical conditions was derived from her understanding of the conclusions that were reached by Dr. Clark, the pulmonologist with whom Plaintiff consulted. *Id.* at 34-35. Thus, Dr. Madigosky should not be permitted to provide purportedly expert testimony on the nature of Plaintiff's health complaints that he attributes to mold, because Dr. Madigosky does not actually have any of her own opinions on the respiratory conditions that Plaintiff allegedly has.

To the extent that Dr. Madigosky does actually have any opinions regarding Plaintiff's medical issues, these opinions are not reliable under F.R.E. 702 because Dr. Madigosky did not rule out alternative causal mechanisms. Rather, although not explicitly stated in Plaintiff's supplemental expert disclosure, Dr. Madigosky's opinion that Plaintiff's medical condition was caused by mold exposure appears to have been formed entirely based on Plaintiff's subjective reports regarding his symptoms, and his representation that there was a temporal relationship between his symptoms and his exposure to mold.

The 10th Circuit has rejected expert testimony where the expert rules out alternative causes of an injury based on subjective patient report. *See, id.* at 777 (holding that expert's ruling out other alternative explanations of injury because he had no reason to doubt the subjective report of the patient was not based on scientific

methods and procedures, and was based solely on subjective beliefs and unsupported speculation."); *see also, Kilpatrick,* at 1343 (holding that, where an expert does not scientifically rule out alternative causes in a differential analysis, "[t]he key foundation for applying differential diagnosis [is] missing" and the analysis is unreliable); *see also, McClain,* at 1243 (holding that a reliable methodology should take into account the background risk of a plaintiff and other members of the general public of suffering an injury in the absence of a traumatic event or exposure).

The only condition that Dr. Madigosky evaluated in Plaintiff was his subjective report of shortness of breath. This is not a scientific diagnosis; rather, shortness of breath is a symptom that Dr. Madigosky learned of completely through the subjective history provided by Plaintiff himself. Dr. Madigosky's opinion attributing Plaintiff's alleged shortness of breath to his alleged mold exposure is also premised entirely on Plaintiff's subjective reports. The 10th Circuit has explicitly rejected expert causation opinions founded on subjective patient report, holding such opinions to be founded on nothing more than subjective beliefs and unsupported speculation. *See, e.g., Huerta v. BioScrip Pharm. Svcs., Inc.,* 429 Fed.Appx. 768, 777 (10th Cir. 2011).

Finally, although not expressly stated in Plaintiff's supplemental expert disclosure, Dr. Madigosky's opinion that Plaintiff's health conditions were caused by mold may have been related to Plaintiff's subjective report that his symptoms emerged after he was exposed to mold. Dr. Madigosky did not confirm that Plaintiff actually was exposed to any potentially harmful levels of mold, and she therefore again is relying entirely on Plaintiff's subjective report.[2]

---

[2] As discussed in Auto-Owners' Motion to Exclude Testimony of Rod Schafer, Auto-Owners disputes Plaintiff's claims that mold developed as a result of the 2009 and/or 2011 water intrusion events.

Moreover, even if Dr. Madigosky could reliably conclude that there was a temporal relationship between Plaintiff's symptoms and exposure to mold, the law in the 10th Circuit is clear that, in evaluating injury causation, a temporal relationship, by itself, provides no evidence of causation, and evidence that leads to the blunder of the *post hoc, ergo propter hoc* fallacy has been rejected summarily in courts in both the 10th Circuit and federal jurisdictions across the country. *See, e.g., Carr v. Castle,* 337 F.3d 1221, 1231 (10th Cir. 2003)(stating that evidence that partakes in the *post hoc, ergo propter hoc* fallacy "flunk[s] the causation requirement"); *see also, Goebel v. Denver & Rio Grande W. R.R. Co.,* 346 F.3d 987, 999 (10th Cir. 2003) (courts are not permitted to rely on the temporal relationship by itself as evidence of causation); *see also, Norris v. Baxter Healthcare Corp.,* 397 F.3d 878, 885 (10th Cir. 2005) ("A correlation does not equal causation."); *see also, Sunward Corp. v. Dun & Bradstreet, Inc.,* 811 F.2d 511 (10th Cir. 1987)(rejecting evidence consisting of "reasoning from sequence to consequence, that is, assuming a causal connection between two events merely because one follows the other); *see also, Harris v. Matthews,* 2010 WL 3322701 (D. Colo. 2010)(granting summary judgment where causation evidence relied on *post hoc, ergo propter hoc,* which Judge Blackburn characterized as neither competent evidence, nor permissible inference); *see also, In re Breast Implant Litigation,* 11 F.Supp.2d 1217, 1232 (D. Colo. 1998) ("A temporal relationship by itself provides no evidence of causation;" the court further noted that, since "[t]emporality at best addresses the issue of specific causation… evidence of temporality is inadmissible where no admissible evidence of general causation exists."); *see also, Bowers v. Norfolk Southern Corporation*, 537 F. Supp.2d 1343, 1359 (M.D.Ga. 2007) ("This fallacy is one that

13

ancient logicians exposed several millennia ago, but that still causes the naïve to stumble. Opinions based on little, if anything, more than this time-dishonored fallacy should not go to the jury."); *see also, McClain v. Metabolife Intern., Inc,* 401 F.3d 1233, 1243, 1254 (11th Cir. 2005)(holding "[d]rawing such a conclusion [regarding causation] from temporal relationships leads to the blunder of the *post hoc ergo propter hoc* fallacy…"and "is also subject to the problem of assuming what the witness is trying to prove;" the court noted that "[t]his pitfall will most likely arise when, as here, there are not scientific controls in place."); *see also, Kilpatrick v. Breg, Inc.*, 2009 WL 20058384, * 10 (S.D. Fla.)(Rejecting expert's specific causation testimony resting on *post-hoc ergo propter-hoc* fallacy. "It may be 'almost irresistible to conclude that what happens shortly after the event must have been caused by the event,' but that is not the basis of good science.")(affirmed by *Kilpatrick v. Breg, Inc.,* 613 F.3d 1329, 1343 (11th Cir. 2010) (rejecting expert testimony premised, in part, on temporal relationship, because the *post hoc ergo propter hoc* fallacy makes an assumption based on the false inference that a temporal relationship proves a causal relationship)); *see also, Black v. Food Lion, Inc.*, 171 F.3d 308, 313 (5th Cir. 1999)(*Post-hoc ergo propter-hoc* reasoning "is as unacceptable in science as in law."); *see also, In re Accutane Products Liability*, 511 F.Supp.2d 1288, 1299-1300 (M.D. Fla. 2007); *see also, Christensen v. U.S.,* 2007 WL 1467347, p. 7 (D. Colo. 2007).

In sum, Dr. Madigosky's opinions should be excluded, not only because she lacks sufficient qualifications, but also because she did not employ a reliable methodology in forming her opinions regarding general and specific causation of Plaintiff's alleged medical conditions.

### IV. CONCLUSION:

As set forth herein, Dr. Madigosky's opinion that Plaintiff developed respiratory health problems as a result of exposure to mold is not actually an expert opinion. Dr. Madigosky did not use a reliable general causation methodology because she was unable to reference any support in the medical literature or epidemiological studies to establish that mold exposure is capable of causing the type of respiratory issues Plaintiff claims he developed. In addition, Dr. Madigosky's specific causation opinion is unreliable because she did not employ a valid differential diagnosis, and instead based her opinion solely on Plaintiff's subjective complaints and the purported temporal relationship between his alleged exposure to mold and the onset of his symptoms. The 10th Circuit has explicitly rejected medical causation opinions premised on subjective patient report and temporality alone. Therefore, Auto-Owners requests that the Court exclude the testimony of Dr. Madigosky and further requests that the Court hold an evidentiary hearing to test the F.R.E. 702 foundational requirements underlying this proffered testimony.

Respectfully submitted this 4th day of March, 2014.

**GREGORY R. GIOMETTI & ASSOC., P.C.**

*Original Signature on File*
*s/ Amanda M. Burke*
Gregory R. Giometti, #16868
Amanda M. Burke, #39311
Gregory R. Giometti & Associates, P.C.
50 S. Steele Street, Suite 480
Denver, CO 80209
Telephone:   (303) 333-1957
Facsimile:   (303) 377-3460
E-mail:   ggiometti@giomettilaw.com
           aburke@giomettilaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of March, 2014, a true and correct copy of the foregoing **MOTION TO EXCLUDE TESTIMONY OF WENDY MADIGOSKY, M.D. PURSUANT TO F.R.E. 702** was served via the ECF filing upon the following:

Jeremy A. Sitcoff
Nelson A. Waneka
Roberts Levin Rosenberg PC
1660 Wynkoop, Suite 800
Denver, CO 80202

              *s/ Robin Chadwick*
              Robin Chadwick