**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 1:12-cv-00980-REB-KLM

HOSSEIN BAGHER, d/b/a CHERRY CREEK ORIENTAL RUGS,

    Plaintiff,

v.

AUTO-OWNERS INSURANCE COMPANY,

    Defendant.

---

**ORDER RE:  MOTIONS TO EXCLUDE EXPERT TESTIMONY**

---

**Blackburn, J.**

This matter is before me on the following: (1) **Motion To Exclude Testimony of Brendan Clark, M.D. Pursuant to F.R.E. 702** [#72][1]; (2) **Motion To Exclude Testimony of Rod Schafer Pursuant to F.R.E. 702** [#73]; **Motion To Exclude Testimony of Wendy Madigosky, M.D. Pursuant to F.R.E. 702** [#74]; and (4) **Plaintiff's Motion To Strike Opinions of Clifford Cooper** [#75], all filed March 4, 2014.  The parties filed responses [#81, #82, #83, #84] and replies [#89, #90, #91, #92]. I grant the motion concerning Clifford Cooper in part and deny it in part.  I deny the other motions.

### I.  STANDARD OF REVIEW

In their motions, the parties seek to exclude the testimony of expert witnesses endorsed by the opposing party.  Rule 702 of the Federal Rules of Evidence, which

---

[1] "[#72]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

governs the admissibility of expert witness testimony, provides:

>A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
>(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
>(b) the testimony is based on sufficient facts or data;
>
>(c) the testimony is the product of reliable principles and methods; and
>
>(d) the expert has reliably applied the principles and methods to the facts of the case.

FED.R.EVID. 702. As interpreted by the Supreme Court, Rule 702 requires that an expert's testimony be both reliable and relevant. ***Daubert v. Merrell Dow Pharmaceuticals, Inc.***, 509 U.S. 579, 589 - 92 (1993); ***Truck Insurance Exchange v. MagneTek, Inc.,*** 360 F.3d 1206, 1210 (10th Cir. 2004). The Supreme Court has described the court's role in weighing expert opinions against these standards as that of a "gatekeeper." ***See Kumho Tire Company, Ltd. v. Carmichael***, 526 U.S. 137, 147 (1999). Generally, "rejection of expert testimony is the exception rather than the rule." ***United States v. Nacchio***, 519 F.3d 1140, 1154 (10th Cir. 2008), *vacated in part on rehearing en banc*, 555 F.3d 1234 (10th Cir. 2009); FED.R.EVID. 702, 2000 Advisory Comm.'s Notes.

## II. BACKGROUND

This case arises from two separate insurance claims made by the plaintiff, Hossein Bagher, in 2009 and 2011. Both claims concerned alleged water damage at the business owned and operated by Mr. Bagher, Cherry Creek Oriental Rugs (CCOR),

a retail rug store. According to Mr. Bagher, as a result of the 2009 water leak, a number of rugs in the store were either damaged or destroyed. In addition, Mr. Bagher claims that, as a result of the 2011 incident, a number of additional rugs were damaged or destroyed. He claims further claims there was damage to the building itself. At the time of these alleged water intrusions, Mr. Bagher and his business were insured under policies issued by the defendant, Auto-Owners Insurance Company.

Auto-Owners provided some coverage for the losses, but has denied additional coverage. The plaintiff, Hossein Bagher, claims he is entitled to additional coverage for the 2009 and 2011 losses. In his complaint [#11-1]Mr. Bagher asserts three claims: (1) breach of express contract; (2) bad faith breach of insurance contract; and (3) a statutory claim for unreasonable delay or denial of insurance payments under §§10-3-1115 and 10-3-1116, C.R.S.

In September 2013, Mr. Bagher was permitted to endorse three additional expert witnesses related to a new theory of damages. Mr. Bagher now contends that the alleged growth of mold in the CCOR building is attributable to the claims handling of Auto Owners. He claims further that, as a result of the mold, he has suffered bodily injury, including permanent lung scarring.

### III. SUMMARY OF PROPOSED OPINION TESTIMONY

A.  Brendan Clark, M.D. - Dr. Clark has been endorsed by Mr. Bagher as a non-specially retained expert witness – a treating physician. In his supplemental expert disclosure, Mr. Bagher provided the following summary of Dr. Clark's proffered opinions:

> If called, Dr. Clark is expected to testify consistent with his treatment
> notes, Plaintiff's other medical records disclosed in this case, as well as
> his deposition, if taken. Specifically, Dr. Clark may testify concerning the
> onset, exacerbation, and treatment of Plaintiff's various pulmonary and

3

> other medical issues following the 2011 water loss, including but not
> limited to shortness of breath, wheezing, and the development of asthma.
> Dr. Clark may testify that these symptoms and disorders primarily
> developed following the 2011 water loss and are consistent with Plaintiff's
> exposure to mold in his retail rug store following the loss. Dr. Clark is
> expected to testify that Plaintiff has developed permanent lung scarring as
> result of his exposure to that mold, as is supported by CT scans
> conducted shortly before the loss and again in the years following the loss,
> the former of which shows no lung scarring and the latter of which does.
> Dr. Clark may testify regarding the various treatments recommended or
> prescribed to Plaintiff, as well as the various tests and investigations
> conducted by himself and other treatment providers at the University of
> Colorado Hospital and elsewhere. Dr. Clark may also testify concerning
> Plaintiff's prognosis for the future, and any recommendations he may have
> in this regard. Dr. Clark may testify regarding the types of mold that can
> cause pulmonary or other medical issues within the body, and the types of
> illnesses or medical issues that can be caused by such mold. Dr. Clark
> may also summarize the medical treatment Plaintiff has received from
> other providers, specifically those affiliated with the University of Colorado
> Hospital. Because Plaintiff is still treating with Dr. Clark, his opinions may
> be supplemented following additional treatments or investigations
> occurring after the date of this disclosure. Dr. Clark's opinions in this
> matter will be made to a reasonable degree of medical probability.

*Motion* [#72], Exhibit 2, pp. 3 - 4.

    B.  <u>Wendy Madigosky, M.D.</u> - Dr. Madigosky has been endorsed by Mr. Bagher as a non-specially retained expert witness – a treating physician.  In his supplemental expert disclosure, Mr. Bagher provided the following summary of Dr. Madigosky's proffered opinions:

> If called, Dr. Madigosky is expected to testify consistent with her treatment
> notes, Plaintiff's other medical records disclosed in this case, as well as
> her deposition, if taken. Specifically, Dr. Madigosky may testify concerning
> the onset, exacerbation, and treatment of Plaintiff's various pulmonary and
> other medical issues following the 2011 water loss, including but not
> limited to shortness of breath, wheezing, and the development of asthma.
> Dr. Madigosky may testify that these symptoms and disorders primarily
> developed following the 2011 water loss and are consistent with Plaintiff's
> exposure to mold in his retail rug store following the loss. Dr. Madigosky is
> expected to testify that Plaintiff has developed permanent lung scarring as
> result of his exposure to that mold, as is supported by CT scans
> conducted shortly before the loss and again in the years following the loss,

4

>     the former of which shows no lung scarring and the latter of which does.
>     Dr. Madigosky may testify regarding the various treatments recommended
>     or prescribed to Plaintiff, as well as the various tests and investigations
>     conducted by herself and other treatment providers at the University of
>     Colorado Hospital and elsewhere. Dr. Madigosky may also testify
>     concerning Plaintiff's prognosis for the future, and any recommendations
>     she may have in this regard. Dr. Madigosky may also summarize the
>     medical treatment Plaintiff has received from herself and other providers,
>     specifically those affiliated with the University of Colorado Hospital.
>     Because Plaintiff is still treating with Dr. Madigosky, her opinions may be
>     supplemented following additional treatments or investigations occurring
>     after the date of this disclosure. Dr. Madigosky's opinions in this matter will
>     be made to a reasonable degree of medical probability.

*Motion* [#74], Exhibit 2, pp. 4-5.

      C.  Rod Schafer - Mr. Bagher endorsed Mr. Schafer as a specially retained expert who was hired to conduct an investigation of CCOR to evaluate the presence of mold.  Based on his findings, Mr. Schafer also prepared a remediation plan, which is part of his report.  *Motion* [#73], Exhibit 3.  Mr. Schafer recommended that a mold remediation plan be implemented, opining that the mold levels at CCOR were "unacceptable."

      D.  Clifford Cooper - Auto Owners has endorsed Clifford Cooper as a certified industrial hygienist to provide opinion testimony concerning the mold claim of Mr. Bagher.  In his report, dated November 15, 2013, Mr. Cooper states that his report addresses: (1) Exhibit 1, Shafer Environmental Consulting, Fungal Assessment and Remediation Work Plan, Ken Schafer, October 24, 2013; and (2) Plaintiff's medical injury claim.  *Motion* [#75], Exhibit 2, at 13-14.  In addition, Mr. Cooper summarizes certain portions of Mr. Bagher's medical records.

      In his report, addressing the medical injury claim of Mr. Bagher, Mr. Cooper summarizes the medical reports of Mr. Bagher.  Then, Mr. Cooper cites a lengthy list of

5

medical references which he reviewed. Following that list, he represents:

> Consistent with this review, the following conclusions can be drawn with a reasonable degree of scientific certainty:
>
> 1. Risk of lower respiratory injury from mold exposure, including interstitial lung disease in the absence of identifiable characteristic clinical symptoms shows little support in the medical literature.
>
> 2. Where a fungal source is associated with a disease, clinical methods are readily available to diagnose the disease agent.
>
> I state the following conclusions regarding Plaintiff [*sic*] Claim of lung injury with a reasonable degree of scientific certainty:
>
> 1) There is ample authoritative scientific literature that in total is unambiguous in the conclusion that health risks associated with mold are uncommon.
>
> 2) Peer-reviewed medical literature does not show mold or mold by-products has produced clinical manifestations similar to those displayed by the Plaintiff;
>
> 3) Medical testing showed the Plaintiff sensitive to "trees and shrubs" but not to mold.
>
> 4) Peer-reviewed medical literature does show that where a fungal source is associated with a disease, clinical methods are readily available to diagnose the disease agent.
>
> 5) Peer-reviewed medical literature does show that mycotic lung disease is characterized by identifiable fungal growth.
>
> 6) The reviewed medical reports provide no evidence to validate the claim than an environmental agent, mold or otherwise, originating from the subject building contributed to the Plaintiff's reported symptoms.

*Motion* [#75], Exhibit 2, pp. 13-14.

## IV.  ANALYSIS

### A.  Qualifications

<u>1.  Dr. Madigosky</u> - An expert is qualified to testify in the form of an opinion only if

the expert has knowledge, skill, experience, training, education, or other specialized knowledge sufficient to permit the expert to develop a reliable opinion. Dr. Madigosky is a general practitioner who treated Mr. Bagher for a variety of conditions. When Mr. Bagher reported breathing difficulties, Dr. Madigosky conducted some tests and examinations but, ultimately, Dr. Madigosky referred Mr. Bagher to one or more specialists, including Dr. Clark. In her deposition, Dr. Madigosky described her treatment and testing of Mr. Bagher and the fact that she referred him to specialists. Asked if she believes Mr. Bagher developed asthma as a result of exposure to mold, Dr. Madigosky said that, based on the evaluation of pulmonologists, she concludes mold likely did cause the asthma from which Mr. Bagher suffers. *Motion* [#74], Exhibit 3, p. 12.

      Auto Owners contends that Dr. Madigosky is not qualified to opine about a causal relationship between mold and the breathing difficulties of Mr. Bagher because she concedes that she relies on specialists to evaluate this causal link. The deposition testimony of Dr. Madigosky indicates that she herself conducted some examinations and provided some treatment to Mr. Bagher with regard to his breathing difficulties, referred Mr. Bagher to specialists, and then reviewed the findings of the specialists. This testimony indicates that Dr. Madigosky relies both on her own examination and treatment and on the conclusions of the specialists. Under FED. R. EVID. 703, a medical doctor may rely on the opinions of other doctors as part of an opinion concerning medical causation. Thus, the challenged opinion of Dr. Madigosky is not based solely on the findings and opinions of other doctors.

      Although Dr. Madigosky is not a pulmonologist, she is a medical doctor with

sufficient knowledge, skill, experience, training, and education to permit her to develop a reasonably reliable opinion on this issue, even though that opinion is based, in part, on the evaluation of other experts. To the extent there are lacunae or other flaws in her qualifications, those issues affect weight and credibility, not admissibility.

    2. Rod Schafer - In its motion challenging Mr. Schafer, Auto Owners contends Mr. Schafer is not qualified to opine about "mold or the implications of its presence in an indoor environment," or that the mold levels at CCOR were unaccpetable. *Motion* [#73], pp. 5 - 6. Mr. Schafer identifies himself as a "Certified Mold Inspector / Industrial Hygienist." Mr. Schafer owns an environmental consulting company, has more than 24 years of management experience in the environmental consulting and industrial hygiene industry. He holds certifications relevant to mold inspection and has done work in the areas of mold inspection and abatement. *Schafer report* [#73-2], CM/ECF pp. 55 - 56.

    Generally, Mr. Schafer has sufficient knowledge, skill, experience, training, and education to permit him to develop a reasonably reliable opinion on the presence of mold at CCOR and the level of mold found there. Based on this knowledge and experience, Mr. Schafer may well have sufficient qualifications to testify about what levels of mold generally are considered to be acceptable or unacceptable in an indoor environment. On the current record, I cannot determine precisely how Mr. Schafer might opine at trial about acceptable levels of mold. Thus, this order does not purport to approve any and all such opinions. That determination must await the development of the evidentiary landscape at trial.

    In its reply [#89], Auto Owners contends Mr. Schafer is not qualified to testify that the mold levels at CCOR would be hazardous to humans and to Mr. Bagher. Those

specific opinions were not addressed in the initial motion of Auto Owners [#73], and Mr. Bagher has not had an opportunity to respond to these new contentions. Whether Mr. Schafer is qualified, *vel non*, to testify about the level of mold that is harmful to humans, must await the development of his testimony at trial.

      3.  <u>Clifford Cooper</u> - Mr. Bagher contends Mr. Cooper is not qualified to render the six opinions listed above in the summary of opinions given in the report of Mr. Cooper. In the view of Mr. Bagher, Mr. Cooper lacks the knowledge, skill, experience, training, or education necessary to qualify him to offer medical opinions concerning the lung condition suffered by Mr. Bagher.

      In its response [#83], Auto Owners says Mr. Bagher has mis-characterized the opinions Mr. Cooper intends to offer.

> Mr. Cooper does not intend to offer expert testimony regarding the nature of Plaintiff's alleged health complaints, does not intend to dispute the diagnoses Plaintiff has received, and he is not offering any opinion contrary to the medical diagnoses contained in his review of plaintiff's medical reports . . . . (R)ather, the focus of his opinions is whether these diagnosed issues have a causal relationship to the alleged mold exposure.

*Response* [#83], pp. 4 - 5.

      Auto Owners asserts that Mr. Cooper has expertise and knowledge in the area of epidemiology; thus, qualifying him to opine about the causal relationship, *vel non*, between exposure to mold and the diagnosed conditions of Mr. Bagher. According to Auto Owners, these opinions are based on the expertise of Mr. Cooper in this area and his "knowledge of the medical and toxicological literature and other scientific underpinnings of the lack of a causal relationship between the types of injuries diagnosed in Mr. Bagher and exposure to mold." *Response* [#83], p. 5.

      The decision to qualify someone as an expert rests not on the specific academic

9

degree held, but on the presence of sufficient knowledge, skill, experience, training or education. "It would make little sense to exalt the opinion of a medical doctor with no experience in toxic exposure over the opinion of, for example, an eminently qualified toxicologist with a Ph.D. and years of experience and training." **In re Paoli R.R. Yard PCB Litig.**, 916 F.2d 829, 862 (3d Cir. 1990). "While it is true that an expert must demonstrate special competence to present expert testimony, there is no per se rule that non-physicians are unqualified to testify about the medical condition of individuals exposed to chemicals." *Id*. (internal quotation and citation omitted).

Mr. Cooper has substantial education and experience in the field of epidemiology. This education and experience is sufficient to qualify Mr. Cooper to testify to the opinion enumerated above as 3), *see supra*. at 6, although that is just a reiteration of one of the medical records of Mr. Bagher.

On the other hand, the opinions enumerated above as 1), 2), 4), 5), and 6), *see id*., are simply a summary reiteration of peer reviewed medical literature. As stated in the report of Mr. Cooper, these opinions, which are based on summaries of the medical literature, are not cited as the basis for an epidemiological analysis of Mr. Cooper and applied to the case of Mr. Bagher. Rather, these opinions stand on their own simply as summaries of the medical literature. In essence, Mr. Cooper indicates that the opinions of those who wrote the peer reviewed medical literature are contrary to the diagnoses and opinions of the doctors who treated Mr. Bagher.

The opinions enumerated above as 1), 2), 4), 5), and 6) seek to present a summary of the expert opinions of others in the guise of an opinion of Mr. Cooper. Nothing in the record demonstrates that the authors of the literature reviewed by Mr.

Cooper are qualified to testify to the opinions stated. The fact that Mr. Cooper has many estimable qualifications, including in epidemiology, does not mean he can simply reiterate the expert opinions of others, *a fortiori*, when those opinions do not form a significant part of an independent, expert analysis Mr. Cooper applied to the facts of this case. Ratiocination may not be replaced by reiteration. See **Fed. R. Evid. 703.**

Moreover, the real problem is that Mr. Cooper is not qualified to testify about medical causation. Mr. Cooper neither professes nor demonstrates the requisite knowledge, skill, experience, training, or education to opine about medical causation. His reading and understanding of ostensibly relevant literature does not *ipso facto* qualify him as an expert about the subject matter of that which he reads. If reading and understanding constituted the relevant test of qualifications under Rule 702, then any competent reader could be qualified as an expert on the subject matter of his reading material. Rule 702 demands much more.

### B. Reliability of Methodology

1. Dr. Clark  - Auto Owners contends that the opinions of general and specific causation of Dr. Clark do not meet the reliability requirements of Rule 702. "General causation is whether a substance [or event] is capable of causing a particular injury or condition in the general public, and specific causation is whether a substance [or event] caused a particular individual's injury." **Norris v. Baxter Healthcare Corp.**, 397 F.3d 878, 881 (10th Cir. 2005). It is well recognized in both the legal and scientific realms that, in order to establish injury causation, "Plaintiff must first demonstrate general causation because without general causation, there can be no specific causation." *Id*.

General causation can be established by epidemiology, controlled studies,

medical literature.  *See In re Breast Implant Litig.*, 11 F. Supp. 2d 1217, 1224 (D. Colo. 1998).  Auto Owners criticizes Dr. Clark because he could not cite any such studies or literature when questioned at his deposition.  However, such citations from memory are not required.  Rather, citation of studies, such as those noted by Mr. Bagher in his response [#83], is sufficient.

Independent of the issue of general causation, Auto Owners contends the opinion of Dr. Clark concerning specific causation is unreliable because this opinion is based only on the subjective reports of Mr. Bagher.  As noted by Mr. Bagher, Dr. Clark testified in his deposition that he conducted two physical examinations of Mr. Bagher, reviewed the medical records of Mr. Bagher, and reviewed the results of medical testing ordered by himself and others.  Dr. Clark examined other potential causes of the symptoms of Mr. Bagher, considered and eliminated other potential causes, and thus concluded that mold exposure is the most probable cause.  However, the Tenth Circuit has acknowledged the reliability of such a differential diagnostic analysis.

> Differential diagnosis is the determination of which of two or more diseases with similar symptoms is the one from which the patient is suffering, by a systematic comparison and contrasting of the clinical findings. In the medical context, differential diagnosis is a common method of analysis, and federal courts have regularly found it reliable under *Daubert*.

*See Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1237 (10th Cir. 2004) (internal quotation marks and citations omitted)..  Thus, the methods used by Dr. Clark are sufficiently reliable to satisfy Rule 702(c).  To the extent there are gaps or other flaws in the analysis and conclusions of Dr. Clark, those gaps or other flaws go to the weight and credibility to be accorded to his opinions and not to their admissibility.

The only challenge to the opinions of Dr. Clark addressed by Auto Owners in its

motion is the challenge to the reliability of the methods used by Dr. Clark. Applying the standards of Rule 702, Auto Owners has not demonstrated that the methods used by Dr. Clark are not sufficiently reliable. Therefore, the motion of Auto Owners challenging the admissibility of the opinions of Dr. Clark should be denied.

  2. <u>Dr. Madigosky</u> - Auto Owners challenges the reliability of the methods used by Dr. Madigosky on essentially the same bases on which Auto Owners challenges the methods of Dr. Clark. For the reasons discussed in relation to Dr. Clark, above, I conclude that the methods used by Dr. Madigosky are sufficiently reliable for the purposes of Rule 702(c). To the extent there are gaps or other flaws in the analysis and conclusions of Dr. Madigosky on these points, those gaps or other flaws implicate weight and credibility, not admissibility. Thus, the motion of Auto Owners challenging the admissibility of the opinions of Dr. Madigosky should be denied.

  3. <u>Rod Schafer</u> - According to Auto Owners, the opinion of Mr. Schafer that there are unacceptable levels of mold at CCOR are not based on a reliable methodology. Auto Owners contends the methods used by Mr. Schafer in evaluating the presence of mold at CCOR are not based on science and lack acceptance in the relevant scientific community. Clifford Cooper, an industrial hygienist hired by Auto Owners, opines that certain aspects of the methodology of Mr. Schafer are flawed in significant ways and, to some extent, are not consistent with industry standards.

  Mr. Schafer conducted a physical assessment and visual inspection of the CCOR building. He identified and confirmed building materials affected by visible fungi and noted a musty, mildew odor throughout the site. Mr. Cooper, the expert of Auto Owners, agrees that photographs in the report of Mr. Schafer show that, at the time of

the inspection, there were staining characteristics of mold growth, at least historic mold growth. *Response* [#84], Exhibit 1 (Cooper deposition), 95:13 - 16.

In addition, Mr. Schafer developed what he calls Data Quality Objectives (DQOs), collected air samples, moisture meter readings, and tape samples, and submitted samples to a laboratory for analysis. Auto Owners contends that the DQOs developed by Mr. Shafer were not developed in a reliable fashion and that the mold samples he obtained were not evaluated against verifiable criteria. Auto Owners contends also that the sampling methods of Mr. Schafer are not a reliable means to determine mold exposure levels at CCOR.

The authorities cited by the parties, including the opinions of the expert of Auto Owners, indicate that there is significant controversy about both mold sampling techniques and the determination of what level of mold is acceptable or unacceptable. As demonstrated in the record of this case, however, those controversies do not demonstrate that the sampling methods and standards used by Mr. Schafer are so unreliable that they fall outside of the level of reliability required by Rule 702(c). Mr. Bagher does not have to prove that Mr. Schafer is undisputably correct or that his theory is generally accepted in the scientific community. **Bitler v. A.O. Smith Corp.**, 400 F.3d 1227, 1233 (10th Cir. 2004). Rather, he need demonstrate only that the sampling methods used and the standards applied are scientifically sound and reasonably reliable. *Id*.

On the current record, I find that Mr. Bagher has demonstrated sufficiently the reasonable reliability of Mr. Schafer's sampling methods and the standards he applied. To the extent there are gaps or other flaws in his methods or standards, those gaps or

other flaws go to the weight and credibility to be accorded to his opinions and not to the admissibility of those opinions. Accordingly, the motion of Auto Owners challenging the admissibility of the opinions of Mr. Schafer should be denied.

### V. CONCLUSION & ORDERS

Based on the current record, I conclude that the proposed expert testimony of Brendan Clark, M.D., Wendy Madigosky, M.D., and Rod Schafer satisfies the requirements of FED. R. CIV. P. 702. I conclude that the proposed opinion testimony of Clifford Cooper stating that "medical testing showed the Plaintiff sensitive to 'trees and shrubs' but not to mold" satisfies the requirements of FED. R. CIV. P. 702. However, the other proposed opinion testimony of Mr. Cooper does not satisfy the requirements of FED. R. CIV. P. 702, and, thus, is not admissible. All else is for cross-examination and competing evidence.

**THEREFORE, IT IS ORDERED** as follows:

1. That the **Motion To Exclude Testimony of Brendan Clark, M.D. Pursuant to F.R.E. 702** [#72] filed March 4, 2014, is **DENIED**;

2. That the **Motion To Exclude Testimony of Rod Schafer Pursuant to F.R.E. 702** [#73] filed March 4, 2014, is **DENIED**;

3. That the **Motion To Exclude Testimony of Wendy Madigosky, M.D. Pursuant to F.R.E. 702** [#74] filed March 4, 2014, is **DENIED**; and

4. That the **Plaintiff's Motion To Strike Opinions of Clifford Cooper** [#75] filed March 4, 2014, is **DENIED** in part and **GRANTED** in part:

    a. that concerning the proposed opinion that "medical testing showed the Plaintiff sensitive to 'trees and shrubs' but not to mold" the motion is **DENIED**; and

      b.  that otherwise, the **Plaintiff's Motion To Strike Opinions of Clifford Cooper** [#75] filed March 4, 2014, is **GRANTED**.

Dated March 25, 2014, at Denver, Colorado.

                                              **BY THE COURT:**

*/s/ Robert E. Blackburn*
Robert E. Blackburn
United States District Judge